UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY EFFINGER, et al., | Case No. 22-cv-03596-RS |
| Plaintiffs, | |
| v. | ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |
| ANCIENT ORGANICS LLC, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiffs bring this putative food mislabeling class action against Defendant Ancient Organics, a California corporation that makes and sells ghee, a clarified butter product. The operative First Amended Class Action Complaint ("FACAC") avers violations of California consumer protection law on the theory that Defendant's label led consumers to believe the ghee was healthy when, in fact, it contains dangerously high levels of saturated fats. Defendant has moved to dismiss on several grounds, and the motion was submitted without oral argument. *See* Civ. L.R. 7-1(b). For the reasons discussed below, the motion is granted in part and denied in part.

## II. BACKGROUND[1]

This case involves ghee, a type of clarified butter commonly used in South Asian cooking.

---

[1] The factual background is based on the averments in the FACAC, which must be taken as true for purposes of this motion, and documents of which the Court may take judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

United States District Court
Northern District of California

*See Ghee*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/ghee (last accessed Feb. 21, 2023). Ancient Organics, based in Berkeley, California, manufactures, markets, and distributes a ghee product ("the Product") throughout the United States (pictured below). The Product's simple label contains the words "Eat Good Fat" in all-caps, and it describes the Product as providing vitamins and "sustained energy levels," as well as being "the very best fat one can eat." Dkt. 17 ("FACAC"), at 2 & fig. The label further invites consumers to "[u]se this superfood to nourish your mind, body and soul." *Id.*; *see also* Dkt. 27, Ex. A.[2]



Plaintiffs Kelly Effinger and Keefe Stevernu purchased the Product at grocery stores in Northern California. They allege that, based on the Product's label, they perceived the Product to be "healthy, healthful, better for them, and a healthier alternative to the competition." FACAC ¶ 18. Yet the label is misleading, Plaintiffs argue, because the Product contains "dangerously high levels of saturated fats," which have been shown to increase the risk of "[coronary heart disease], stroke, and other morbidity." *Id.* ¶¶ 20, 35. Had it not been for these misrepresentations, Plaintiffs would not have paid such a premium for the Product.

Plaintiffs filed suit in June 2022. The operative FACAC[3] raises claims for relief on behalf of three putative classes. On behalf of a "California Class" (i.e., consumers in California),

---

[2] Defendant's request for judicial notice of the full Product label, *see* Dkt. 27, is granted.

[3] By stipulation, Plaintiffs filed an amended complaint after their initial complaint mistakenly named the defendant as "Ancient Organics LLC," which no longer exists. *See* Dkt. 14.

1    Plaintiffs bring a claim under the California Consumer Legal Remedies Act ("CLRA"), CAL. BUS.

2    & PROF. CODE § 1750 *et seq.* For a "Multi-State Consumer Class" (i.e., consumers in California

3    and ten other states), Plaintiffs aver violations of various state consumer protection laws similar to

4    California's that "prohibit the use of unfair or deceptive business practices in the conduct of trade

5    or commerce." FACAC ¶ 202. Finally, on behalf of a "Nationwide Class" (i.e., all consumers in

6    the United States), Plaintiffs raise claims under the California Unfair Competition Law ("UCL"),

7    CAL. BUS. & PROF. CODE § 17200 *et seq.*; the California False Advertising Law ("FAL"), CAL.

8    BUS. & PROF. CODE § 17500 *et seq.*; and unjust enrichment. Defendant moved to dismiss under

9    Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

10                                    **III. LEGAL STANDARD**

11       **A.  Rule 12(b)(1)**

12          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's

13    subject-matter jurisdiction over the asserted claims. The plaintiff bears the burden of proving

14    jurisdiction at the time the action is commenced. *See Tosco Corp. v. Cmtys. for Better Env't*, 236

15    F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77

16    (2010). A facial attack under Rule 12(b)(1) "asserts that the allegations contained in the complaint

17    are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373

18    F.3d 1035, 1039 (9th Cir. 2004). When considering this type of challenge, the court is required to

19    "accept as true the allegations of the complaint." *United States ex rel. Lujan v. Hughes Aircraft

20    Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001).

21       **B.  Rule 12(b)(6)**

22          Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a

23    claim. A complaint must contain a short and plain statement of the claim showing the pleader is

24    entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a

25    complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its

26    face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S.

27    544, 570 (2007)). However, "[t]hreadbare recitals of the elements of a cause of action, supported

28

United States District Court
Northern District of California

by mere conclusory statements, do not suffice." *Id*. Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (internal quotation marks and citation omitted). When evaluating such a motion, courts must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

### C.  California Statutes

The UCL "bars 'unfair competition' and defines the term as a 'business act or practice' that is (1) 'fraudulent,' (2) 'unlawful,' or (3) 'unfair,'" each of which are independent grounds for liability. *Shaeffer v. Califia Farms, LLC*, 258 Cal. Rptr. 3d 270, 276 (Ct. App. 2020) (quoting CAL. BUS. & PROF. CODE § 17200). The FAL prohibits "any advertising device . . . which is untrue or misleading." CAL. BUS. & PROF. CODE § 17500. Finally, the CLRA defines various "unfair methods of competition and unfair or deceptive acts or practices." CAL. CIV. CODE § 1770. Some of these unfair methods or acts include representing that goods have characteristics or benefits they do not have, and representing that goods are "of a particular standard, quality, or grade" when they actually are not. *Id.* All three statutes utilize the reasonable consumer standard, under which plaintiffs "must show that 'members of the public are likely to be deceived.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). More specifically, this standard "requires a plaintiff to show potential deception of consumers acting reasonably in the circumstances — not just any consumers." *Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 115 (Ct. App. 2011); *see Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014). Courts often analyze claims under these three statutes together. *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1064 (N.D. Cal. 2017).

### IV. DISCUSSION

Defendant's motion presents a smorgasbord of arguments, some of which are substantive and some of which are jurisdictional. First, Defendant asserts that Plaintiffs' claims must be

United States District Court
Northern District of California

1    dismissed because (1) they are preempted by federal law, (2) no reasonable consumer would be

2    misled by the Product's label, and (3) the label statements are nonactionable puffery. Defendant

3    also moves to dismiss under Rule 12(b)(1), arguing Plaintiffs do not have standing to bring claims

4    on behalf of out-of-state class members, nor do they have standing to challenge products they did

5    not personally purchase. Finally, Defendant moves to dismiss Plaintiffs' unjust enrichment claim.

6    **A.  Federal Preemption and Plaintiffs' Mislabeling Claims**

7    Preemption in the context of food mislabeling claims can be a hard nut to crack, but it

8    ultimately boils down to a few key principles. First, the Food, Drug, and Cosmetics Act

9    ("FDCA"), 21 U.S.C. § 301 *et seq.*, and its amendments implemented through the Nutrition

10   Labeling and Education Act of 1990 ("NLEA"), expressly preempt state laws and claims for relief

11   that seek to impose "non-identical requirements in the field of food labeling." *Astiana v. Ben &*

12   *Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796, at *8 (N.D. Cal. May 26, 2011).

13   More specifically, these requirements stem from 21 U.S.C. § 343(r), which outlines "nutrient

14   content claims," both express and implied, as well as "health claims." *See Ackerman v. Coca-Cola*

15   *Co.*, No. CV-09-0395 (JG)(RML), 2010 WL 2925955, at *3 (E.D.N.Y. July 21, 2010). So, for

16   instance, in *Durnford v. MusclePharm Corp.*, 907 F.3d 595 (9th Cir. 2018), the plaintiff argued

17   the defendant's products were mislabeled because it had "engaged in 'protein spiking' or 'nitrogen

18   spiking' — the practice of inflating measurements of a supplement's protein content using non-

19   protein substances." *Id.* at 598. The Ninth Circuit concluded that, because federal regulations

20   clearly allowed producers to employ nitrogen spiking, the plaintiff's state law claims were

21   preempted because they "would permit a state to impose requirements for the measurement of

22   protein for purposes of the federal mandated nutrition panel different from those permitted under

23   the FDCA." *Id.* at 603; *see also Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1121 (N.D.

24   Cal. 2010) (state law claim preempted because defendant had complied with federal regulations

25   regarding disclosure of trans fats, and state law claim would have "impose[d] a non-identical

26   burden"); *Astiana*, 2011 WL 2111796, at *8 ("[W]here manufacturers are in compliance with

27   FDA requirements regarding express nutrient content labeling — such as those for trans fats —

United States District Court
Northern District of California

requiring those manufacturers to add or change something on the label regarding that trans fat content would necessarily impose a state-law requirement for disclosure of trans fats.").

Where a state law claim attempts to impose the *same* requirements under federal law, however, this problem does not arise. In *Hadley v. Kellogg Sales Co.*, the plaintiff contended that labels on breakfast cereals and cereal bars describing the products as "heart healthy" were inconsistent with FDA regulations governing health claims of this type. The district court concluded that, because the label was "allegedly not in compliance with the federal regulations," the statements were not preempted. 273 F. Supp. 3d at 1077; *see also Ackerman*, 2010 WL 2925955, at *13 ("These claims are not preempted by the FDCA because they seek to impose requirements on the defendants that are identical to those imposed by the FDCA."). However, district courts in the Ninth Circuit have split over whether plaintiffs can state a UCL claim by relying on an averred violation of California's Sherman Law, CAL. HEALTH & SAFETY CODE § 111730, which incorporates FDA regulations by reference. In *Chong v. KIND, LLC*, 585 F. Supp. 3d 1215 (N.D. Cal. 2022), this Court applied the Supreme Court's reasoning in *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), to conclude that a UCL claim brought pursuant to a violation of the Sherman Law was preempted because the law "post-dates and is entirely dependent upon the FDCA, in that it expressly adopts the FDCA and regulations as state law." 585 F. Supp. 3d at 1219; *see also Davidson v. Sprout Foods Inc.*, No. 22-cv-01050-RS, 2022 WL 13801090, at *4 (N.D. Cal. Oct. 21, 2022), *appeal docketed*, No. 22-16656 (9th Cir. Oct. 26, 2022). *But see Brown v. Van's Int'l Foods, Inc.*, 22-cv-00001-WHO, 2022 WL 1471454, at *8 (N.D. Cal. May 10, 2022) ("respectfully disagree[ing] with *Chong*").

Finally, if federal law is *silent* as to a specific type of label statement, a claim that the statement is misleading is typically not preempted. *See Tabler v. Panera*, 19-CV-01646-LHK, 2019 WL 5579529, at *5 (N.D. Cal. Oct. 29, 2019) (finding that the NLEA's preemption provision "does not apply" to claims of false or misleading labeling); *Chacanaca*, 752 F. Supp. 2d at 1119 ("If the statements are not nutrient claims, then the NLEA's express preemption provision would not in the ordinary circumstance come into play."). Recently, for instance, the district court

in *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957 (N.D. Cal. 2022), held that the plaintiffs' claims were "not preempted because the challenged term, 'Health-Ade,' does not constitute a 'health' or 'nutrient content' claim, which are the pertinent labeling claims governed by federal law." *Id.* at 970. Similarly, in *Tabler v. Panera*, the district court concluded that federal law did not regulate the phrases "clean" and "100% clean" on product labels, and thus any claims that these statements were misleading "would not conflict with" the FDCA or the NLEA. 2019 WL 5579529, at *5; *see also Hadley*, 273 F. Supp. 3d at 1075; *Tran v. Sioux Honey Ass'n, Coop.*, No. 17-cv-110-JLS-JCGx, 2018 WL 10612686, at *3 (C.D. Cal. Aug. 20, 2018) (no pertinent regulation governing statements that product was "pure" or "100% pure," and thus no preemption).

To determine whether a claim is preempted as to a certain label statement, the first step is to identify which statements or omissions, exactly, are at issue. On the face of the FACAC, Plaintiffs appear to aver that five affirmative statements on the label are misleading: (1) "Eat Good Fat"; (2) "the very best fat one can eat"; (3) "Use this superfood to nourish your mind, body and soul"; (4) "[the Product] provides sustained energy levels"; and (5) "Omega 3, 6, 9, Vitamins A, D, E & K." FACAC ¶¶ 26–28 & figs. Plaintiffs further argue that the omission of required disclosure statements regarding fat content is illegal.

To the extent Plaintiffs attempt to rely on an "implied-nutrient-content-claim theory," Dkt. 26, at 15, that theory is not viable based on the facts disclosed in the FACAC. Although Plaintiffs frequently characterize many of the label statements as "nutrient content claims," *e.g.*, FACAC ¶¶ 7, 26, 32, the only statements conceivably susceptible to that designation would be those regarding the Product's fat content (e.g., "Eat Good Fat"). While federal law does regulate implied nutrient content claims regarding fat levels, these regulations apply only to statements about the *amount* of fat in a product — not the fat's quality or value. *See* 21 C.F.R. § 101.65(c)(1) (implied nutrient content claims are those that "suggest that a nutrient or an ingredient is absent or *present in a certain amount*" (emphasis added)); *id.* § 101.65(d)(2)(i) (listing, *inter alia*, maximum amounts of fat permitted in food products to describe those products as "healthy"). Here, the label

1  plainly does not claim the Product is "low" in fat; it claims the Product has "good fat" and "the

2  very best fat one can eat." Further, the regulations cited by Plaintiffs apply only where a label uses

3  the term "healthy" (e.g., "healthy fat") or other variations of the root word "health." *See id.* §

4  101.65(d)(2). As Defendant notes, the FDA has explicitly refused to expand this regulation to

5  other qualifiers, like "wholesome" or "good for you." *See* Food Labeling: Nutrient Content

6  Claims, Definition of Term: Healthy, 59 Fed. Reg. 24,232, 24,235–36 (May 10, 1994). Thus,

7  Plaintiffs are incorrect that the label statements include implied nutrient content claims. To the

8  extent Plaintiffs are implicitly attempting to expand the labeling regulations to cover statements

9  like the ones here, this would impose non-identical requirements, and therefore the claim would be

10  preempted. Finally, even if the Product did include nutrient content claims, thus requiring the label

11  to include "mandatory disclosure statements," *see* 21 C.F.R. § 101.13(h), Plaintiffs would be

12  preempted from bringing suit on that basis. *Chong*, 585 F. Supp. 3d at 1219.

13      This does not, however, doom Plaintiffs' case. Defendant misreads the FACAC as being

14  "uniformly premised" on the theory that the label violates federal regulations. Dkt. 26, at 15. In

15  reality, Plaintiffs also allege that the labels are "false or misleading because they state, suggest, or

16  imply that [the Product] is healthful, conducive to health, and won't detriment health, which

17  render it misbranded." FACAC ¶ 66. As noted above, none of the challenged statements are

18  nutrient content claims, and thus, federal preemption does not apply. The salient question, then, is

19  whether the FACAC adequately states that a reasonable consumer would likely be deceived by

20  Defendant's statements; the answer is, generally, yes. The FACAC plausibly states that the

21  challenged statements would mislead consumers into believing the Product is healthy for them (or

22  healthier than competing products), but the risks attendant to the high levels of saturated fat render

23  it unhealthy or dangerous.

24      Defendant argues that no reasonable consumer would be misled by the challenged

25  statements, and that the statements themselves all constitute nonactionable puffery. These

26  arguments are, with one exception, unavailing. The Ninth Circuit has previously advised that

27  whether a set of statements qualify as misleading "will usually be a question of fact not

United States District Court
Northern District of California

28

1    appropriate for decision on [a motion to dismiss]." *Gerber*, 552 F.3d at 938. Here, taking into

2    account the "context of the packaging as a whole," *id.* at 939 n.3, Defendant fails to persuade that

3    *no* reasonable consumer would be so misled. The single exception is the label statement describing

4    the Product as a "superfood" that can be used "to nourish your body, mind and soul." This

5    statement is nonactionable puffery: it does not have any "specific, concrete meaning" on which a

6    consumer could reasonably rely. *Hadley*, 273 F. Supp. 3d at 1083. Plaintiffs may, however,

7    proceed on their claims as to the other challenged label statements.

8        **B. Standing Issues**

9            *1. Unpurchased Products*

10           In addition to its arguments on the merits, Defendant argues Plaintiffs "lack standing to sue

11   for products they did not purchase." Dkt. 26, at 15. As a general matter, this contention is

12   incorrect: courts in the Ninth Circuit have concluded that named plaintiffs do not lack standing

13   simply because they have not personally purchased some of the products in a larger group of

14   challenged products. *See Davidson v. Sprout Foods Inc.*, No. 22-cv-01050-RS, 2022 WL 2668481,

15   at *3 (N.D. Cal. July 11, 2022); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1073 (N.D.

16   Cal. 2015) (noting the trend of district courts "allow[ing] these putative class actions to proceed as

17   to the 'similar' product claims and leave for class certification the question of whether the named

18   plaintiff can adequately represent a class of individuals who purchased the 'similar' products").

19          Nevertheless, the complaint must still aver with enough specificity *which* products are

20   being challenged. Here, the FACAC does not precisely state which size container of the Product

21   the Plaintiffs purchased, though it does include a clear depiction of the 32-ounce container. *See*

22   FACAC, at 8 fig. While the parties agree that the Product is sold in multiple sizes with similar

23   labeling, this is not reflected in the FACAC. *See* Dkt. 26, at 2 ("The Product is sold in a glass jar

24   of different sizes, with substantially the same labeling."); Dkt. 28, at 8 ("Defendant sells a single

25   Product offered in a variety of sizes. The Product is sold in similar packaging with the same

26   representations and omissions regardless of size."). Even if the labels on all the various sizes of the

27   Product are the same or substantially similar, it would be improper to "assume that each of these

28

United States District Court
Northern District of California

subtly different Products is like all the others." *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d

1134, 1142 (N.D. Cal. 2013); *see also McKinney v. Corsair Gaming, Inc.*, No. 22-cv-00312-CRB,

2022 WL 2820097, at *13 (N.D. Cal. July 19, 2022) (dismissing claims based on unpurchased

products because plaintiffs had only "vaguely allege[d] that the misrepresentations on different . . .

products [we]re similar"). Thus, while the motion is denied in this respect, the claims may proceed

only on the basis that the label on the 32-ounce size of the Product is at issue.

### 2. *Multi-State Consumer Class and Nationwide Class Claims*

Defendant further argues that Plaintiffs lack standing to bring suit on behalf of putative

class members outside of California.[4] While there is no dispute that Plaintiffs have standing to

bring suit on their own behalf and (at least potentially) on behalf of similarly situated California

consumers, the FACAC is much broader in scope: Plaintiffs also seek to represent (1) a class of

consumers in California, Florida, Illinois, Massachusetts, Minnesota, Missouri, New Jersey, New

York, Pennsylvania, Oregon, and Washington, invoking the allegedly "similar" consumer

protection laws of each of these states; and (2) a class of all consumers in the United States,

invoking California law. The parties chiefly disagree over whether these issues need to be

addressed currently (that is, at the pleading stage), or at the class certification stage.

The issue of whether class certification should be decided before or after standing in cases

such as the present one is a "difficult chicken-and-egg question." *Perez v. Nidek Co., Ltd.*, 711

F.3d 1109, 1113 (9th Cir. 2013). Ultimately, however, the order of decision is left to the district

court's discretion. For example, in *In re Carrier IQ*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015), this

Court carefully reviewed other district court decisions and concluded there is no "rigid rule that

precludes class certification from being addressed before standing issues." *Id.* at 1074. However,

prudential concerns, such as a reluctance to subject defendants to nationwide discovery where the

---

[4] While the FACAC uses the term "nationwide" to refer to all consumers in the United States who purchased the Product and the term "multi-state" to refer to all consumers in California and the ten other states specified, Defendant's motion appears to use "nationwide" to refer both groups. *See* Dkt. 26, at 17–18. To avoid confusion, and for the sake of completeness, both of Plaintiffs' proposed out-of-state classes are addressed in this section.

United States District Court
Northern District of California

1   plaintiffs' standing was dubious, led the Court to "decline[] to exercise this discretion" and

2   "require the Plaintiffs to present a named class member who possesses individual standing to

3   assert each state law's claims against Defendants." *Id.*

4         This conclusion is compelling as to the putative Multi-State Consumer Class claim. Here,

5   there are no named Plaintiffs from any state besides California, and Plaintiffs do not suggest they

6   themselves were injured in any state other than California. *See id.* at 1075; *Jones v. Micron Tech.*

7   *Inc.*, 400 F. Supp. 3d 897, 908–09 (N.D. Cal. 2019) (finding named plaintiffs from five states

8   lacked standing to bring suit on behalf of consumers in twenty other states); *cf. In re Target Corp.*

9   *Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1160 (D. Minn. 2014) ("[T]his is not a case where a

10  single named plaintiff asserts the laws of a multitude of states in which that plaintiff does not

11  reside. Rather, there are 114 named Plaintiffs who reside in every state in the union save four and

12  the District of Columbia."). Plaintiffs have thus failed to establish standing to assert claims on

13  behalf of the Multi-State Consumer Class members under the laws of these other jurisdictions.

14  This determination is proper at the current stage given the significant risks in allowing their claim

15  to proceed:

16         [T]here is a meaningful risk that the requirements of class certification
       under Rule 23 may not be met or, if they are, subclasses may have to
17         be created which would engender delay (adding that any new named
       plaintiffs would likely be subject to another round of discovery and
18         further class certification motion practice).

19  *Carrier IQ*, 78 F. Supp. 2d at 1074–75. The motion is therefore granted with respect to the

20  putative Multi-State Consumer Class claim, and Plaintiffs will be required to add other named

21  class representatives who do have individual standing to assert claims from the other states. *E.g.*,

22  *Johnson v. Nissan N. Am.*, 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017).

23         Plaintiffs may proceed, however, with their claims on behalf of the putative Nationwide

24  Class. As this Court has elsewhere noted, "California courts have concluded that '[the UCL, FAL,

25  and CLRA] may be invoked by out-of-state parties when they are harmed by wrongful conduct

26  occurring in California.'" *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL

27  3829653, at *7 (N.D. Cal. July 23, 2013) (quoting *Norwest Mortg., Inc. v. Super. Ct.*, 85 Cal. Rptr.

28

United States District Court
Northern District of California

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
CASE NO. 22-cv-03596-RS

11

2d 18, 25 (Ct. App. 1999)). Whether these laws may be applied to interstate plaintiffs involves a two-step process:

> First, the plaintiff bears the onus to demonstrate the application of California law comports with due process. This involves establishing "sufficient contacts" between the alleged misconduct and the state. Second, the onus then shifts to the defendant to show that foreign law, rather than California law, should apply to these claims.

*Arroyo v. TP-Link USA Corp.*, No. 14-CV-04999-EJD, 2015 WL 5698752, at *3 (N.D. Cal. Sept. 29, 2015) (citations omitted) (citing, e.g., *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022)). Here, Plaintiffs have adequately pleaded that Defendant's wrongful conduct occurred in California, and Defendant has failed to show (or even argue) that another forum's law should apply. *See McKinney*, 2022 WL 2820097, at *12–13; *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 548 (C.D. Cal. 2012). Granted, proving that California law is appropriate for the Nationwide class may ultimately be difficult. *See, e.g.*, *McKinney v. Corsair Gaming, Inc.*, No. 22-cv-00312-CRB, 2022 WL 17736777, at *8 (N.D. Cal. Dec. 16, 2022) (concluding, after choice-of-law analysis, that "each class member's individual consumer protection claims must be governed by the laws of their home state and Plaintiffs cannot bring a nationwide class on those foreign class members' behalf"). At present, however, the Nationwide class claims may proceed, and the motion to dismiss is denied in this regard.

## C. Unjust Enrichment

Finally, Defendant moves to dismiss Plaintiffs' claim for unjust enrichment, both on the grounds that California law does not recognize a standalone claim for unjust enrichment and because Plaintiffs have failed to plead sufficiently their other claims for relief. The latter argument is moot in light of the discussion above: Plaintiffs have stated viable claims that the Product contains false or misleading labeling. As to the former argument, it is true that "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-

contract claim seeking restitution.'" *Id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (Ct. App. 2014)). Here, given that "Defendant does not make any argument about the substance of the unjust enrichment claim itself," the claim may proceed at this stage, subject to being folded into other substantive claims upon being further refined. *Davidson*, 2022 WL 2668481, at *6. The motion is thus denied in this respect.

## V. CONCLUSION

The motion to dismiss is granted with respect to Count V, with leave to amend in order to add additional out-of-state named plaintiffs. The motion is denied with respect to Counts I, II, III, and IV, but these claims may not proceed on the theory that (1) the Product label includes illegal implicit nutrient content claims, (2) it fails to include mandatory disclosure statements, or (3) the statement that the Product is a "superfood" that can be used "to nourish your body, mind and soul" is false or misleading. In addition, surviving claims may proceed only on the basis that the label on the 32-ounce size of the Product is at issue, subject to any amendment including more specific details as to any other labels Plaintiffs seek to challenge. Any amended pleadings must be filed within 28 days of the entry of this order.


**IT IS SO ORDERED**.


Dated: February 24, 2023

_____

RICHARD SEEBORG
Chief United States District Judge