GOOD GUSTAFSON AUMAIS LLP
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com

SHENAQ PC
Amir Shenaq, Esq.*
3500 Lenox Road, Ste. 1500
Atlanta GA 30326
Tel: (888) 909-9993
amir@shenaqpc.com

THE KEETON FIRM LLC
Steffan T. Keeton, Esq.*
100 S Commons, Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

*Pro hac vice forthcoming

Counsel for Plaintiff and the Proposed Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kelly Effinger and Keefe Stevernu, individually, and on behalf of those similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>Ancient Organics,<br><br>                Defendant. | CASE NO.  3:22-CV-03596-RS<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**Demand for  Jury Trial** |

Plaintiffs Kelly Effinger and Keefe Stevernu bring this action on behalf of themselves and all others similarly situated against Defendant Ancient Organics ("Ancient Organics" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

"Beware of what storytellers do not tell you. For they must of necessity leave something out . . ."

*Peter Malakoff, Co-Founder[1]*

1.      This case arises from Defendant's deceptive and misleading practices with respect to its marketing and sale of its food products (the "Products" or "Product").

2.      Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign focused on claims that appeal to health-conscious consumers.

3.      Defendant engages in a deceptive marketing campaign to convince consumers that the Products are nutritious and healthful to consume, and are more healthful than similar products.

4.      For example, Defendant prominently features "EAT GOOD FAT" on its Product:

[1] Peter Malakoff, https://www.petermalakoff.com/.

GOOD GUSTAFSON AUMAIS LLP



5.    Further, the Products have the following description printed on the label:



GOOD GUSTAFSON AUMAIS LLP

6.      However, this is false, misleading, and deceptive because Defendant's Products contain high amounts of unsafe fats which increase the risk of severe health issues, including coronary heart disease – the number one killer of Americans every year.

7.      Reasonable consumers purchased the Products believing, among other things, that they were accurately represented. Specifically, reasonable consumers believed that the Products contained accurate label information and representations. Reasonable consumers would not have purchased the Products if they had known about the misrepresentations and omissions, or would have purchased them on different terms.

8.      In stark contrast to the healthy representations, Defendant's Products contain unhealthy levels of saturated fat. In its discussion of saturated fat, the American Heart Association states, "Decades of sound science has proven it can raise your 'bad' cholesterol and put you at higher risk for heart disease."[2]

9.      Cardiovascular Disease is the leading cause of death for men and women in the United States, taking one life every 37 seconds.[3]

10.     Plaintiffs bring this action individually and on behalf of those similarly situated and seeks to represent a Nationwide Class and a California Class. Plaintiffs seek damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits Defendant has enjoyed from

---

[2] American Heart Association, *Saturated Fat*, http://www.heart.org/en/healthy-living/healthy-eating/eat-smart/fats/saturated-fats.

[3] Heron M., *Deaths: Leading causes for 2017*, NATIONAL VITAL STATISTICS REPORTS; vol. 68 no. 6, National Center for Health Statistics. 2019 *available at* https://www.cdc.gov/nchs/data/nvsr/nvsr68/nvsr68_06-508.pdf.

CLASS ACTION COMPLAINT

its unlawful and/or deceptive business practices, as detailed herein. In addition, Plaintiffs seek injunctive relief to stop Defendant's unlawful conduct in the labeling and marketing of the Products and conduct a corrective advertising campaign.

## JURISDICTION AND VENUE

11.    This Court has personal jurisdiction over Defendant. Defendant purposefully avails itself of the California consumer market and distributes the Products to many locations within this District and hundreds of retail locations throughout the State of California, where the Products are purchased by thousands of consumers every day. Additionally, Defendant's headquarters is located in this District.

12.    This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed Plaintiffs class, any member of the Plaintiffs class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

13.    Venue is proper in this District under 28 U.S.C. § 1391(a). Plaintiffs' purchases of Defendant's Products, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District and the Defendant conducts business through its headquarters located in this District.

GOOD GUSTAFSON AUMAIS LLP

CLASS ACTION COMPLAINT

**DIVISIONAL ASSIGNMENT**

14.     Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims arose in Alameda County, and this action should be assigned to the Oakland Division.

**PARTIES**

15.     Plaintiff Kelly Effinger is a citizen of California.

    a.  Prior to purchase, Plaintiff Effinger saw and relied on Defendant's marketing and labeling representing that the Products were healthy, healthful, better for them, and a healthier alternative to the competition.

    b.  Plaintiff Effinger has purchased the Product on multiple occasions in the 16 oz. and 32 oz. sizes. Plaintiff Effinger's most recent purchase of the Product occurred in August 2021 from a Grocery Outlet store located in Stockton, CA.

16.     Plaintiff Keefe Stevernu is a citizen of California.

    a.  Prior to purchase, Plaintiff Stevernu saw and relied on Defendant's marketing and labeling representing that the Products were healthy, healthful, better for them, and a healthier alternative to the competition.

    b.  Plaintiff Stevernu has purchased the Products on multiple occasions in the 16 oz. size. Plaintiff Stevernu's most recent purchase of the Products occurred in November 2020 from a Whole Foods store located in Berkeley, CA.

GOOD GUSTAFSON AUMAIS LLP

CLASS ACTION COMPLAINT

17.     Plaintiffs purchased the Products for personal consumption. When Plaintiffs saw Defendant's misrepresentations prior to and at the time of purchase, they relied on Defendant's prominent representations and claims about the Products. Specifically, that it was healthy, healthful, better for them, a healthier alternative to the competition, healthful, conducive to health, and won't detriment health. Defendant emphasizes these representations in the marketing and on the labeling of the Product.

18.     Plaintiffs relied on the Defendant's representations, including but not limited to, the "EAT GOOD FAT" representations made on the Product as well as the reference that it was the "very best fat one could eat" and the reference to the vitamins contained in it.

19.     Plaintiffs understood these representations to mean that the Product was healthy, healthful, better for them, a healthier alternative to the competition, healthful, conducive to health, and wouldn't detriment health. Had Plaintiffs known the truth – that it failed to conform to those representations, and rather, it contained dangerously high levels of saturated fats – Plaintiffs would not have purchased the Product at a premium price.

20.     Plaintiffs have enjoyed the Products in the past. If they could be assured through prospective injunctive relief that the Products are properly labeled, they would consider purchasing the Products in the future.

21.     Plaintiffs bring the claims below seeking damages, actual and statutory, as well as injunctive relief.

22. Defendant is a California corporation with its principal place of business in Berkeley, CA. From its California headquarters, Defendant produces, markets, and distributes its consumer food products in retail stores throughout the United States.

23. Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who have knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## SUBSTANTIVE ALLEGATIONS

### A. Defendant Makes, Markets, and Sells the Product to Consumers.

24. Defendant manufactures, labels, distributes, advertises, and sells the Products.

25. Defendant markets and labels the Product with the representations and omissions as described herein. Specifically, the Product's label contains: (1) representation, in large font, stating that it contains "GOOD FAT" on the label, (2) representation stating that it "is the very best fat one can eat" and "can be used to nourish your mind, body, and soul" on the label, (3) the claim that it "provides sustained energy levels" on the label, and (4) the claim that it contains "OMEGA 3, 6, 9, VITAMINS A, D, E, & K" on the label.

26. The Product:



GOOD GUSTAFSON AUMAIS LLP

27.     Additionally, the side panel states:



28.     In the above example, "EAT GOOD FAT" is presented in all capital
letters and in a larger font than the Defendant's name and the Product's name.

29.     This represents to consumers that the fat contained in the Product is good for them, and thus the Product is healthy and healthful.

30.     This representation is consistent with co-founder Matteo Girard Maxon's goal, "One of the core elements of this food foundation is healthy fat."[4]

31.     The Product is available in numerous sizes including 8 oz., 16 oz., 32 oz., 64 oz., and 128 oz.

32.     Regardless of size, the representations on the Product are substantially similar.



33.     Specifically, each version of the Product is a slightly larger version of the same or substantially similar packaging:

        a.  Front of Product

[4] *Healthy foods made in Berkeley build immunity — and community*, Discovered in Berkeley Blog (Oct. 2, 2020), https://www.discoveredinberkeley.com/2020/10/02/healthy-foods-made-in-berkeley-build-immunity-and-community/.

GOOD GUSTAFSON AUMAIS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GOOD GUSTAFSON AUMAIS LLP



   i.  8 oz.



   ii.  16 oz.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GOOD GUSTAFSON AUMAIS LLP



     iii.   32 oz.



     iv.   64 oz.

GOOD GUSTAFSON AUMAIS LLP



   v. 128 oz.

  b. Side Panel A



   i. 8 oz.



ii.   16 oz.

iii.   32 oz.

iv.   64 oz.[5]

---

[5] Defendant's 64 oz. container's Side Panel A has the representation "EAT GOOD FAT."

– 13 –

GOOD GUSTAFSON AUMAIS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



       v.  128 oz.

  c.  Side Panel B



       i.  8 oz.



ii.   16 oz.



iii.   32 oz.

CLASS ACTION COMPLAINT

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP



 iv. 64 oz.



 v. 128 oz.

**B. The Products Contain High Levels of Saturated Fat.**

34. Defendant's Product contains high levels of saturated fat.

35. The majority - 64% - of the fats contained within the Product are saturated fat.

36. As demonstrated by the studies cited below, consuming the Product is unhealthy as it increases risk of CHD, stroke, and other morbidity.

37.     These high levels of saturated fat are present even when consumed in small amounts.

38.     One serving of the Product contains 9 grams of saturated fat in just a single tablespoon.

39.     For example, one tablespoon of the Product equals the amount of saturated fat in three large orders of McDonald's fries.[6]

40.     Additionally, one tablespoon of the Product has more saturated fat than one KFC Fried Chicken breast and three KFC Fried Chicken drumsticks combined.[7]

41.     The Product contains saturated fat levels that exceed thresholds of concern as dictated by the FDA.

## C. Saturated Fat Consumption Increases the Risk of Cardiovascular Disease and Other Morbidity

42.     Cholesterol is a waxy, fat-like substance found in the body's cell walls. The body uses cholesterol to make hormones, bile acids, vitamin D, and other substances. The body synthesizes all the cholesterol it needs, which circulates in the bloodstream in packages called lipoproteins, of which there are two main kinds—low density lipoproteins, or LDL cholesterol, and high-density lipoproteins, or HDL cholesterol.

43.     LDL cholesterol is sometimes called "bad" cholesterol because it carries cholesterol to tissues, including the arteries. Most cholesterol in the blood is LDL cholesterol.

---

[6] An entire large order of McDonald's fries contains 3 grams of saturated fat. McDonald's French Fries Nutritional Information, https://www.mcdonalds.com/us/en-us/product/large-french-fries.html.

[7] KFC Nutrition Guide, https://www.kfc.com/full-nutrition-guide.

GOOD GUSTAFSON AUMAIS LLP

44.     HDL cholesterol is sometimes called "good" cholesterol because it takes excess cholesterol away from tissues to the liver, where it is removed from the body.

45.     Total and LDL cholesterol blood levels are two of the most important risk factors in predicting coronary heart disease (CHD), with higher total and LDL cholesterol levels associated with increased risk of CHD.[8]

46.     High LDL cholesterol levels are dangerous because "[e]levated blood LDL cholesterol increases atherosclerotic lipid accumulation in blood vessels."[9] That is, if there is too much cholesterol in the blood, some of the excess may become trapped along artery walls. Built up formations of cholesterol on arteries and blood vessels are called plaque. Plaque narrows vessels and makes them less flexible, a condition called atherosclerosis.

47.     Thus, "[f]or the health of your heart, lowering your LDL cholesterol is the single most important thing to do."[10]

48.     The consumption of saturated fat negatively affects blood cholesterol levels because the body reacts to saturated fat by producing cholesterol. More

---

[8] *See, e.g.*, Dr. Dustin Randolph, *Coconut Oil Increases Cardiovascular Disease Risk and Possible Death Due to Heart Attacks and Stroke* (Sept. 19, 2015) ("Heart attack and stroke risk can be largely predicted based on total and LDL cholesterol levels in people" because "as cholesterol levels increase so does one's risk of symptomatic and deadly heart disease."), *available at* http://www.pursueahealthyyou.com/2015/04/coconut-oil-increasescardiovascular.html.

[9] USDA Center for Nutrition Policy and Promotion, Dietary Saturated Fat and Cardiovascular Health: A Review of the Evidence, Nutrition Insight 44 (July 2011) [hereinafter, "USDA Review of the Evidence"].

[10] Pritikin Longevity Center, *Is Coconut Oil Bad for You?*, *available at* https://www.pritikin.com/your-health/healthy-living/eating-right/1790-is-coconut-oil-badfor-you.html.

specifically, saturated fat consumption causes coronary heart disease by, among other things, "increas[ing] total cholesterol and low-density lipoprotein (LDL) cholesterol."[11]

49.     Moreover, "[t]here is a positive linear trend between total saturated fatty acid intake and total and low-density lipoprotein (LDL) cholesterol concentration and increased risk of coronary heart disease (CHD)."[12]

50.     This linear relationship between saturated fat intake and risk of coronary heart disease is well established and accepted in the scientific community.

51.     For example, the Institute of Medicine's Dietary Guidelines Advisory Committee "concluded there is strong evidence that dietary [saturated fatty acids] SFA increase serum total and LDL cholesterol and are associated with increased risk of [cardiovascular disease] CVD."[13]

52.     In addition, "[s]everal hundred studies have been conducted to assess the effect of saturated fatty acids on serum cholesterol concentration. In general, the higher the intake of saturated fatty acids, the higher the serum total and low density lipoprotein (LDL) cholesterol concentrations."[14]

53.     Importantly, there is "no safe level" of saturated fat intake because "any incremental increase in saturated fatty acid intake increases CHD risk."[15]

---

[11] USDA Review of the Evidence, *supra* note 9.

[12] Institute of Medicine, *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids*, at 422 (2005) [hereinafter "IOM Dietary Reference Intakes"], *available at* http://www.nap.edu/catalog.php?record_id=10490.

[13] USDA Review of the Evidence, *supra* note 9.

[14] IOM Dietary Reference Intakes, *supra* note 12.

[15] *Id.* at 422.

54.     For this reason, while the Institute of Medicine sets tolerable upper intake levels (UL) for the highest level of daily nutrient intake that is likely to pose no risk of adverse health effects to almost all individuals in the general population, "[a] UL is not set for saturated fatty acids."[16]

55.     In addition, "[t]here is no evidence to indicate that saturated fatty acids are essential in the diet or have a beneficial role in the prevention of chronic diseases."[17]

56.     Further, "[i]t is generally accepted that a reduction in the intake of SFA [saturated fatty acids] will lower TC [total cholesterol] and LDL-cholesterol."[18]

57.     For these reasons, "reduction in SFA intake has been a key component of dietary recommendations to reduce risk of CVD."[19]

58.     The Institute of Medicine's Dietary Guidelines for Americans, for example, "recommend reducing SFA intake to less than 10 percent of calories." And "lowering the percentage of calories from dietary SFA to 7 percent can further reduce the risk of CVD."[20]

---

[16] *Id.*

[17] *Id.* at 460.

[18] Shanthi Mendis et al., *Coconut fat and serum lipoproteins: effects of partial replacement with unsaturated fats*, 85 Brit. J. Nutr. 583, 583 (2001).

[19] USDA Review of the Evidence, *supra* note 9.

[20] *Id.*

GOOD GUSTAFSON AUMAIS LLP

59.     Professor Frank Sacks from Harvard's T.H. Chan School of Public Health believes that "[t]he evidence that saturated fat causes atherosclerosis and heart disease is compelling."[21]

60.     In short, consuming saturated fat increases the risk of CHD and stroke.[22]

61.     In other words, they are not "good fats."

**D. Defendant Violates Identical Federal and State Regulations**

      **a.      Federal and State Regulations Are Identical**

62.     The FDA oversees the regulation and labeling of food pursuant to the Federal Food, Drug and Cosmetic Act ("FDCA").

63.     The Federal Food, Drug, and Cosmetic Act expressly authorizes state regulations, such as the Sherman Law, that are "identical to the requirement[s]" of the FDCA and federal regulations. *See* 21 U.S.C. § 343-1.

64.     California's Sherman Food, Drug and Cosmetic Law, Cal. Heath & Saf. Code § 110765 et seq. (the "Sherman Law"), incorporates all food labeling regulations promulgated by the FDA under the FDCA. *See e.g.*, Cal. Heath & Saf. Code § 110100(a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."), § 110380 and § 110505.

---

[21] Liebman, Bonnie, *Saturated fats: the big picture*, CENTER FOR SCIENCE IN THE PUBLIC INTEREST (Oct. 30, 2021), https://www.cspinet.org/article/saturated-fats-big-picture.

[22] Mendis, *supra* note 18.

GOOD GUSTAFSON AUMAIS LLP

65.     Because the Sherman Law's requirements are identical to the requirements of the Federal Food, Drug, and Cosmetic Act and FDA regulations the Sherman law is explicitly authorized by the FDCA.

### b.     Regulations Governing the Labeling of Food Products

66.     Defendant's deceptive statements described herein violate Cal. Health & Safety Code § 110660 and 21 U.S.C. § 343(a), which both deem a food misbranded if its labeling is "false or misleading in any particular."

67.     As described above, the Products' labeling contains numerous statements that are false or misleading because they state, suggest, or imply that it is healthful, conducive to health, and won't detriment health, which render it misbranded.

68.     In addition, the Product's labeling is misleading, and thus misbranded, because "it fails to reveal facts that are material in light of other representations." 21 C.F.R § 1.21.

69.     Defendant's voluntary and affirmative misrepresentations challenged herein "fail[ed] to reveal facts that are material in light of other representations made or suggested by the statement[s], word[s], design[s], device[s], or any combination thereof," in violation of 21 C.F.R. § 1.21(a)(1). Such omitted facts include the detrimental health consequences of consuming the Products.

70.     Defendant similarly failed to reveal facts that were "[m]aterial with respect to the consequences which may result from use of the article under" both "[t]he conditions prescribed in such labeling," and "such conditions of use as are customary or usual," in violation of § 1.21(a)(2). Namely, Defendant failed to disclose the presence of high levels of saturated fat, and Defendant failed to disclose the

GOOD GUSTAFSON AUMAIS LLP

increased risk of serious chronic disease likely to result from the usual consumption of its Products.

71.     Reasonable consumers interpret Defendant's representations to mean that the Product consists of healthy fats.

72.     This is consistent with the California Dept. of Food & Agriculture's interpretation[23] for the terms:

   a. "Good fat (may be used for unsaturated fats (monounsaturated and polyunsaturated)";

   b. "Bad fat (may be used to indicate saturated and trans fats)."

73.     Plaintiffs and Class Members would not have purchased the Product if they knew the Product contained dangerously high levels of saturated fat and was misbranded pursuant to California and federal regulations because it was not healthful and conducive to health.

74.     To be clear, Plaintiffs do not allege any claims pursuant to the FDCA and Sherman Law and relies on these regulations only to the extent they provide a predicate basis for liability under state and common law, as set forth herein.

**E. The Products are misbranded.**

75.     Under FDCA section 403, a food is "misbranded" if "its labeling is false or misleading in any particular." *See* 21 U.S.C. §§ 343(a).

76.     The perceived healthiness of the Products has a material bearing on price and consumer acceptance.

---

[23] *See, e.g.,* California Dept. of Food & Agriculture, GUIDELINES ON ADVERTISING, PROMOTION AND COMMUNICATIONS FOR COMMODITY MARKETING PROGRAMS, pg. 19, https://www.cdfa.ca.gov/mkt/mkt/pdf/ApprovedAdvertisingGuidelines-2015.pdf.

GOOD GUSTAFSON AUMAIS LLP

77.    Defendant's Products are high in saturated fat at dangerous levels.

78.    Thus, Defendant is not permitted to state, suggest, or imply that the Product is healthful, conducive to health, and won't detriment health.

79.    Because the Defendant fails to reveal the basic nature and characterizing properties of the Products, Defendant's Products are not only sold with misleading labeling but also misbranded under Sections 403(a) of the Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 343(a), and cannot be legally manufactured, advertised, distributed, or sold in the U.S. as it is currently labeled. *See* 21 U.S.C. § 331.

80.    Moreover, California law forbids the misbranding of food in language largely identical to that found in the FDCA.

81.    The Products are misbranded under California's Sherman Law, Cal. Health & Safety Code §§ 109875-111915. The Sherman Law expressly incorporates the food labeling requirements set forth in the FDCA, *see* Cal. Health & Safety Code § 110100(a), and provides that any food is misbranded if its nutritional labeling does not conform to FDCA requirements. *See id.* § 110665; *see also id.* § 110670.

82.    The Sherman Law further provides that a product is misbranded if its labeling is "false or misleading." *Id.* § 110660. It is a violation of the Sherman Law to advertise any misbranded food, *id.* § 110398; to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded, *id.* § 110760; to misbrand any food, *id.* § 110765: or to receive in commerce any food that is misbranded or deliver or proffer it for delivery, *id.* § 110770.

GOOD GUSTAFSON AUMAIS LLP

83.     By misrepresenting the basic nature and characterizing properties of the Products, Defendant violates these federal and state regulations and misleads Plaintiffs and other reasonable consumers.

**F.  Reasonable consumers relied on Defendant's misrepresentations to their detriment.**

84.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

85.     Plaintiffs and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

86.     Defendant's illegal, deceptive conduct leads reasonable consumers to believe that the Products contain "healthy fat,"[24] and are better, healthier, and more nutritious than competing products.

87.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiffs and the Class Members.

**G.  Defendant's wrongful conduct caused Plaintiffs' and the Class Members' injuries.**

88.     Defendant knows that consumers are willing to pay more for food products that are represented as healthy, healthful, better for them, and a healthier alternative to the competition.

---

[24] Discovered in Berkeley Blog, *supra* note 4.

GOOD GUSTAFSON AUMAIS LLP

89.     As a result of these unfair and deceptive practices, Defendant has likely collected millions of dollars from the sale of the Products that they would not have otherwise earned. Plaintiffs and Class Members paid money for food items that are not what they purported to be or what they bargained for. They paid a premium for the Products when they could have instead bought other, less expensive products that do not purport to contain the health benefits of Defendant's Products or state, suggest, or imply that the Product is healthful, conducive to health, and won't detriment health.

90.     In making the false and misleading representations described herein, Defendant knew and intended that consumers would pay for, and/or pay a premium for, a product labeled and advertised as healthy, healthful, better for them, and a healthier alternative to the competition.

91.     As an immediate, direct, and proximate result of Defendant's false and misleading representations, Defendant injured the Plaintiffs and the Class Members in that they:

a. Paid a sum of money for Products that were not what Defendant represented;

b. Paid a premium price for Products that were not what Defendant represented;

c. Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

e. Could not be used for the purpose for which they were purchased; and

GOOD GUSTAFSON AUMAIS LLP

f. Were of a different quality than what Defendant promised.

92.     Had Defendant not made the false, misleading, and deceptive representations, Plaintiffs and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiffs and the Class Members would not have been willing to purchase the Products.

93.     Plaintiffs and the Class Members paid for Products that were purported to consist of healthy "good" fats but received Products that consisted of dangerously high levels of saturated fat.  The products Plaintiffs and the Class Members received were worth less than the products for which they paid.

94.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the representations.

95.     Plaintiffs and the Class Members all paid money for the Products. However, Plaintiffs and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiffs and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiffs and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

**H. Defendant Has Knowledge of These Regulations and Acts with Reckless Disregard**

96.     Defendant is aware of these regulations  and established guidelines yet refuses to comply.

97.     Throughout its website, it makes numerous statements, references, and representations concerning "healthy" fats and its interpretations and research.

a.   In an article entitled "7 Reasons to Eat More Saturated Fat," Defendant includes the following:[25]

It seems that no matter how the story spins from the denizens of the anti-fat camp, one piece of their advice remains staunchly constant: "You should sharply limit your intake of saturated fats." The next admonition will invariably be, "which have been proven to raise cholesterol and cause heart disease." Their over-arching belief is that saturated fat is bad, bad, bad.

You see with just a glance at [our suggested meal plans] that we've included fatty cuts of meat, chicken with the skin, bacon, eggs, butter, coconut oil, organic lard, and heavy cream in the plan. **Aren't we worried that these foods will increase your risk of heart disease and raise your cholesterol? In a word, nope.** In fact, we encourage you to make these important fats a regular part of your healthy diet. Why? Because humans need them and here are just a few reasons why.

b.   In an article entitled "Pass the Ghee, Please," Defendant includes the following:[26]

It is difficult for most Americans to believe that a little fat in their diets can be healthy, let alone be considered good medicine. In Ayurveda, however, pure clarified butter, known as ghee, is one of the most powerful tonics. It is used to heal wounds, improve digestion, fight free radicals, and boost the immune system.

c.   In an article entitled "Rethinking Saturated Fat," Defendant includes the following:[27]

---

[25] *7 Reasons To Eat More Saturated Fat*, Ancient Organics Official Website (Sep. 6, 2009), https://www.ancientorganics.com/7-reasons-to-eat-more-saturated-fat/ (emphasis added).

[26] *Pass the Ghee, Please*, Ancient Organics Official Website (Nov. 1, 2003), https://www.ancientorganics.com/pass-the-ghee-please/.

[27] *Rethinking Saturated Fat*, Ancient Organics Official Website (May 6, 2011), https://www.ancientorganics.com/rethinking-saturated-fat/.

– 28 –

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

> Looking back at the dietary information collected from these thousands of participants, the investigators found no difference in the risk of coronary heart disease, stroke, or coronary vascular disease between those individuals with the lowest and highest intakes of saturated fat. This goes completely against the conventional medical wisdom of the past 40 years.

98.     Defendant knows the rules, the regulations, and the reasonable consumers' interpretation of the Products' representations yet continues to mislead and deceive.

## CLASS DEFINITIONS AND ALLEGATIONS

99.     Plaintiffs, pursuant to Federal Rule of Civil Procedure 23, bring this action on behalf of the following classes:

    a.   California Class: All persons who purchased Defendant's Products within the State of California and within the applicable statute of limitations;

    b.   Nationwide Class: All persons who purchased Defendant's Products within the United States and within the applicable statute of limitations period (collectively, the "Class," "Classes," and "Class Members").

100.    Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Classes, the judge to whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

101.    The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, hundreds of thousands of units of the Products to Class Members.

102.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

    a.  whether Defendant misrepresented material facts concerning the Products on the packaging of every product;

    b.  whether Defendant misrepresented material facts concerning the Products in print and digital marketing of every product;

    c.  whether Defendant's conduct was unfair and/or deceptive;

    d.  whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiffs and the Class;

    e.  whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

    f.  whether Defendant breached implied and express warranties to Plaintiffs and the Class; and

    g.  whether Plaintiffs and the Class have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

103.    Plaintiffs' claims are typical of those of other Class Members because Plaintiff, like all members of the classes, purchased Defendant's Products bearing the healthy "good" fat representations and Plaintiffs sustained damages from Defendant's wrongful conduct.

GOOD GUSTAFSON AUMAIS LLP

104.    Plaintiffs will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions.

105.    Plaintiffs have no interests which conflict with those of the Classes.

106.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

107.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

108.    The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

## CAUSES OF ACTION

### COUNT I
### Violation of California's Unfair Competition Law ("UCL")
### Business and Professions Code § 17200 et seq.
### (On Behalf of the Nationwide Class)

109.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

110.   Plaintiffs bring this cause of action pursuant to the UCL on their own behalf and on behalf of all other persons similarly situated.

111.   The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

**A. Unlawful Prong**

112.   The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

113.   Defendant's labeling and advertising of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, et seq. (Consumer Legal Remedies Act), California Business and Professions Code Section 17500, et seq. (False Advertising Law), Cal. Heath & Saf. Code § 110765 et seq. (the "Sherman Law"), and the common law as described herein.

114.   Defendant's packaging, labeling, and advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

115.   Defendant knew or should have known of their unlawful conduct.

116.   As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of the UCL.

117.   There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have refrained from misrepresenting the true characteristics of the Products.

118.   All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

119.   Pursuant to California Business and Professions Code Section 17203, Plaintiffs and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products. Likewise, Plaintiffs and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiffs restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

120.   Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiffs paid an unwarranted premium for the Product. Plaintiffs would not have purchased the Products if they had known that Defendant purposely deceived consumers into believing that the Products were healthy, healthful, better for them, and a healthier alternative to the competition.

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

121.    As a result of the business acts and practices described above, Plaintiffs and members of the Class, pursuant to § 17203, are entitled to an order enjoining such future wrongful conduct on the part of Defendant and such other orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

122.    Pursuant to Civil Code § 3287(a), Plaintiffs and the Class are further entitled to prejudgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiffs and the California Class are entitled to interest in an amount according to proof.

**B. Unfair Prong**

123.    Under the UCL a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

124.    Defendant's advertising and labeling of the Products as being healthy, healthful, better for them, and a healthier alternative to the competition, when the Products contain dangerously high levels of saturated fat, is false, misleading, and deceptive.

125.    Defendant's false advertising of the Products causes injuries to consumers, who do not receive the promised benefits from the Products in proportion to their reasonable expectations.

GOOD GUSTAFSON AUMAIS LLP

126.    Through false, misleading, and deceptive labeling of the Products, Defendant seeks to take advantage of consumers' desire for healthy food products, while reaping the financial benefits of manufacturing Products that are not as healthy as represented.

127.    When Defendant labels and markets the Products as being healthy, healthful, better for them, and a healthier alternative to the competition, it provides false promises to consumers and stifles competition in the marketplace.

128.    Consumers cannot avoid any of the injuries caused by Defendant's false and misleading advertising of the Products.

129.    Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under the UCL. The courts "weigh the utility of the defendant's conduct against the gravity of the harm alleged to the victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F. 3d 1152, 1169 (9th Cir. 2012).

130.    Defendant's material misrepresentations and omissions result in financial harm to consumers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of its harm.

131.    Some courts require the "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

132.    As described herein, Defendant's conduct impacts the public health of Americans and the competitive landscape for Defendant's competitors that act as good faith market participants.

133.   Defendant's advertising and labeling of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

134.   Defendant knew or should have known of its unfair conduct.

135.   As alleged in the preceding paragraphs, the material misrepresentations by Defendant detailed above constitute an unfair business practice within the meaning of the UCL.

136.   There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have marketed the Products without making any false and deceptive statements about the Products' ingredients.

137.   All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on hundreds of occasions daily.

138.   Pursuant to Business & Professions Code Section 17203, Plaintiffs and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising and labeling of the Products. Plaintiffs and Class Members additionally request an order awarding Plaintiffs and Class Members restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

139.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiffs paid an unwarranted premium for the Products.

**C. Fraudulent Prong**

140.    The UCL considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

141.    Defendant's labeling and advertising of the Products as being healthy, healthful, better for them, and a healthier alternative to the competition is likely to deceive members of the public into believing that the Products are healthier and better for consumers that they are in reality.

142.    Defendant's advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes fraudulent conduct.

143.    Defendant knew or should have known of its fraudulent conduct.

144.    As alleged in the preceding paragraphs, the material misrepresentations and omissions by Defendant detailed above constitute a fraudulent business practice in violation of the UCL.

145.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from marketing and labeling the Products as being healthy, healthful, better for them, and a healthier alternative to the competition.

146.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on hundreds of occasions daily.

147.    Pursuant to Business & Professions Code Section 17203, Plaintiffs and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products. Likewise, Plaintiffs and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiffs restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

148.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiffs and the Class paid an unwarranted premium for the Products. Plaintiffs and the Class would not have purchased the Products if they had known that the Products were not healthy, healthful, better for them, and a healthier alternative to the competition as represented by Defendant.

**COUNT II**
**Violation of California's False Advertising Law ("FAL")**
**Business and Professions Code § 17500 et seq.**
**(On Behalf of the Nationwide Class)**

149.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

150.    Plaintiffs bring this cause of action pursuant to the FAL on their own behalf and on behalf of all other persons similarly situated.

151.    The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

152.    Defendant knowingly disseminated misleading claims regarding the Products in order to mislead the public about the health benefits of the Products.

153.    Defendant controlled the labeling, packaging, production and advertising of the Products. Defendant knew or should have known, through the exercise of reasonable care, that its representations and omissions about the characteristics and ingredients of the Products were untrue, deceptive, and misleading.

154.    Defendant understands that the public values "healthy" representations, and this is shown by the numerous statements that are prominently featured throughout the Products' packaging.

155.    Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

156.    As a direct and proximate result of Defendant's conduct alleged herein in violation of the FAL, Plaintiffs and members of the Class, pursuant to § 17535, are entitled to an order of this Court enjoining such future wrongful conduct on the part of Defendant, and requiring Defendant to disclose the true nature of its misrepresentations.

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

157.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiffs purchased the Products in reliance upon the claims and omissions by Defendant that the Products are healthy, healthful, better for them, and a healthier alternative to the competition, as represented by Defendant's labeling and advertising. Plaintiffs would not have purchased the Products if she had known that the claims and advertising as described herein were false and misleading.

158.    Plaintiffs and members of the Class also request an order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interests and attorneys' fees.

**COUNT III**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Business and Professions Code § 1750 et seq.**
**(Injunctive Relief Only)**
**(On Behalf of the California Class)**

159.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

160.    Plaintiffs bring this claim individually and on behalf of the members of the proposed California Class against the Defendant.

161.    At all times relevant hereto, Plaintiffs and members of the California Class were "consumer[s]," as defined in Civil Code section 1761(d).

162.    At all times relevant hereto, Defendant is a "person," as defined in Civil Code section 1761(c).

– 40 –

163.   At all times relevant hereto, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in Civil Code section 1761(a).

164.   The purchases of the Products by Plaintiffs and members of the California Class were and are "transactions" within the meaning of Civil Code section 1761(e).

165.   Defendant disseminated, or caused to be disseminated, through its packaging, labeling, marketing and advertising misrepresentations that the Products were healthy and healthful by the large representations that the fats contained therein are good for the public's health.

166.   Defendant's representations violate the CLRA in at least the following respects:

   a.   In violation of Civil Code § 1770(a)(5), Defendant represented that the Products have characteristics, ingredients, uses, benefits, and quantities which they do not have;

   b.   In violation of Civil Code § 1770(a)(7), Defendant represented that the Products are of a particular standard, quality, or grade, which they are not; and

   c.   In violation of Civil Code § 1770(a)(9), Defendant advertised the Products with an intent not to sell the products as advertised.

167.   Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiffs provided notice to Defendant of the alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. Notice was sent via certified mail, return receipt requested on May 12, 2022. As of the date of filing this complaint, Defendant has not responded. Accordingly, if after 30 days no satisfactory response to resolve this litigation on a

GOOD GUSTAFSON AUMAIS LLP

class-wide basis has been received, Plaintiffs will seek leave to amend this request to seek restitution and actual damages as provided by the CLRA.

168.    Pursuant to California Civil Code § 1780, Plaintiffs seeks injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems proper.

169.    Defendant knew or should have known that the Products did not contain the claimed characteristics because Defendant manufactured, marketed and sold the Products without those characteristics that they claimed. Defendant knew or should have known that the representations about The Products as described herein violated consumer protection laws, and that these statements would be relied upon by Plaintiffs and members of the California Class.

170.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's and California Class Members' rights and was wanton and malicious.

171.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still representing that their Products have characteristics which they do not have.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of the Nationwide Class)**

172.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

173.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Products to Plaintiffs and Class Members in a manner that was unfair, unconscionable, and oppressive.

GOOD GUSTAFSON AUMAIS LLP

CLASS ACTION COMPLAINT

174.   Defendant knowingly received and retained wrongful benefits and funds from Plaintiffs and the Class Members. In so doing, Defendant acted with conscious disregard for the rights of Plaintiffs and members of the Class.

175.   As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

176.   Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

177.   Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, without justification, from selling the Products to Plaintiffs and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances making it inequitable to do so constitutes unjust enrichment.

178.   The financial benefits derived by Defendant rightfully belong to Plaintiffs and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by Defendant.

## **RELIEF DEMANDED**

179.   WHEREFORE, Plaintiffs, individually and on behalf the Class Members, seeks judgment and relief against Defendant, as follows:

a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiffs to serve as

CLASS ACTION COMPLAINT

GOOD GUSTAFSON AUMAIS LLP

representatives for the Classes and Plaintiffs' counsel to serve as Class

Counsel;

b)   For an order enjoining Defendant from continuing to engage in the

unlawful conduct set forth herein;

c)   For an order awarding restitution of the monies Defendant wrongfully

acquired by its illegal and deceptive conduct;

d)   For an order requiring disgorgement of the monies Defendant

wrongfully acquired by its illegal and deceptive conduct;

e)   For compensatory and punitive damages, including actual and statutory

damages, arising from Defendant's wrongful conduct and illegal conduct;

f)   For an award of reasonable attorneys' fees and costs and expenses

incurred in the course of prosecuting this action; and

g)   For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all causes of action so triable.

Dated: March 24, 2023

**Good Gustafson Aumais LLP**

/s/ J. Ryan Gustafson
J. Ryan Gustafson (Cal. Bar No.220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
cta@ggallp.com

**Shenaq PC**
Amir Shenaq, Esq.*
3500 Lenox Road, Ste 1500
Atlanta, GA 30326
Tel: (888) 909-9993
amir@shenaqpc.com

**THE KEETON FIRM LLC**
Steffan T. Keeton, Esq.*
100 S Commons Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

*Pro hac vice forthcoming*

*Counsel for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT