UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY EFFINGER, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>ANCIENT ORGANICS LLC,<br><br>  Defendant. | Case No. 22-cv-03596-AMO<br><br>**ORDER DENYING CLASS CERTIFICATION**<br><br>Re: Dkt. No. 73 |

This is a putative food mislabeling class action involving allegations of false labeling on ghee, a clarified butter product. Before the Court is Plaintiff Kelly Effinger's motion for class certification. The matter is fully briefed and suitable for decision without oral argument.[1] Accordingly, the hearing set for May 29, 2025 is VACATED. *See* Civil L.R. 7-1(b), Fed. R. Civ. Pro. 78(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court hereby **DENIES** Effinger's motion for the following reasons.

I.   **BACKGROUND**

Defendant Ancient Organics, LLC ("Ancient Organics") manufactures and distributes the ghee products that are the subject of this lawsuit. SAC ¶ 24. Ancient Organics's ghee (the "Product") label contains representations like: (1) a front panel stating "100% ORGANIC," "from GRASS-FED AND PASTURED COWS," "EAT GOOD FAT," with the word "Ayughritam" followed by its translation "Ghee is Life"; (2) an informational side panel stating, e.g., "Ancient Organics Ghee is the very best fat one can eat. Use this superfood to nourish your mind, body and

---

[1] The Court, in its discretion, declines to penalize Plaintiff and the putative class for their counsel's tardy filing of a reply brief. The Court therefore GRANTS Plaintiff's post-hoc motion for extension of time to file a reply, ECF 88, GRANTS the administrative motion to seal counsel's declaration, ECF 85, and DENIES Defendant's Motion to Strike the late-filed reply brief, ECF 83.

soul" and listing "OMEGA 3,6, 9, Vitamins A, D, E & K"; and (3) a nutritional panel listing the product's total fat content as well as the product's sole ingredient "ORGANIC BUTTER (MILK)." SAC ¶¶ 26-27; Keeton Decl. (ECF 73-1), Ex. A-E (product labels). Effinger contends she was misled by Defendant's labeling of the Product, below.



Mot. at 1. Effinger contends that the "eat good fat" representation is particularly misleading. Further, she challenges the representations on the side panel:



Mot. at 2. Effinger states that she saw and relied upon these representations in purchasing the Product. Effinger Decl. (ECF 73-2) ¶¶ 6-8. Plaintiff alleges she "has purchased the Product on

2

multiple occasions[.]" SAC ¶ 15(b). Effinger asserts that she relied on the following statements in making her purchase: "the 'EAT GOOD FAT' representations made on the Product as well as the reference that it was the 'very best fat one could eat' and the reference to the vitamins contained in it" as well as the statement the product "provides sustained energy levels." SAC ¶¶ 18, 25. Effinger also claims to have relied upon the statement "use this superfood to nourish your mind, body, and soul." *Id.* ¶ 25; Effinger Decl. (ECF 73-2) ¶ 7. Effinger claims Ancient Organics's labeling and advertising is false and misleading because the ghee "represents to consumers that the fat contained in the [p]roduct is good for them, and thus the [p]roduct is healthy" and "a healthier alternative to the competition," when the ghee contains purported "dangerously high levels of saturated fat." SAC ¶¶ 29, 124.

Effinger avers she and other consumers understood from the label that the Product is healthy and a healthier alternative to the competition, but the risks attendant to the high levels of saturated fat render it unhealthy or dangerous. As a result, she contends that Ancient Organics's use of health-focused and nutrition-focused claims on the Product's label is deceptive and misleading. She points further to Ancient Organics's website, where Ancient Organics exudes the purported health benefits of the Product, while discounting the serious health consequences of consuming the Product.

## II. DISCUSSION

Effinger moves to certify two classes, including

> Nationwide: All persons in the United States who purchased the Products in the United States from June 17, 2018 until the date of certification ("Class Period"); and

> California: All persons in California who purchased the Products in California from June 17, 2018 until the date of certification ("Class Period").

The Court sets forth the legal standard before turning to whether Effinger has met her burden to warrant class certification.

### A. Legal Standard

"Rule 23 of the Federal Rules of Civil Procedure governs class certification." *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1191 (9th Cir. 2024). The Rule "mandates

that district courts 'rigorous[ly] analy[ze]' whether a proposed class meets various requirements." *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1258 (9th Cir. 2024) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)) (modifications in original). "[A] class action may be maintained if the four prerequisites of Rule 23(a) are met, and the action meets one of the three kinds of actions listed in Rule 23(b)." *Van v. LLR, Inc.*, 61 F.4th 1053, 1062 (9th Cir. 2023). Rule 23(a) requires a showing that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Among the actions listed in Rule 23(b) are those in which "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1023 (9th Cir. 2024), cert. denied, 145 S. Ct. 1308 (2025).

The class certification analysis "may entail some overlap with the merits of the plaintiff's underlying claim," but "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013) (internal quotations and citations omitted). "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* To that end, "the plaintiffs must 'affirmatively demonstrate' by a preponderance of actual evidence that they satisfy all the Rule 23 prerequisites." *Black Lives Matter*, 113 F.4th at, at 1258 (citing White, 104 F.4th at 1192). "[P]laintiffs wishing to proceed through a class action must actually *prove* – not simply plead – that their proposed class satisfies each requirement of Rule 23[.]" *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (emphasis in original).

4

**B.     Rule 23(a)**

The Court takes up numerosity, commonality, and adequacy in turn. Finding Effinger's showing as to all these elements deficient, the Court does not reach typicality nor any of the remaining sections of Rule 23.

    **1.     Numerosity**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members individually is impracticable. Fed. R. Civ. P. 23(a)(1). "Although there is no exact number, some courts have held that numerosity may be presumed when the class comprises forty or more members." *Vizcarra v. Unilever United States, Inc.*, 339 F.R.D. 530, 543 (N.D. Cal. 2021) (internal quotations and citation omitted). "In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it." *In re Yahoo Mail Litigation*, 308 F.R.D. 577, 589-90 (N.D. Cal. 2015). "[W]here evidence of numerosity is entirely lacking," however, "the Court cannot substitute its imagination – no matter how commonsensical – in place of facts." *Shields v. Walt Disney Parks & Resorts US, Inc.*, 279 F.R.D. 529, 546 (C.D. Cal. 2011).

Here, Effinger argues that numerosity is satisfied based on unauthenticated sales data suggesting that Ancient Organics sold at least one thousand (1,000) units of the Product during the Class Period. *See* Keeton Decl., Ex. K (purportedly showing Defendant's annual revenue for an individual year in the Class Period).[2] She advances that a combination of general knowledge and common sense establishes that numerosity is satisfied; the amalgamation of "sales data, Defendant's distribution network of the Product, and common sense show that at least tens of thousands of class members are included in the class." *See* Reply at 9. Exhibit K reveals, however, none of the facts or inferences that might support a finding of numerosity. The bare ledger sheet, devoid even of any dates, does not establish the number of units sold, much less the number of purchasing customers. Effinger presents zero evidence regarding the price of the

---

[2] In light of the compelling reasons shown by Ancient Organics, the Court GRANTS the administrative motion to seal Exhibit K. *See* ECF 74; *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

1  products that would even allow for a calculation of the units sold based on the purported revenues.
2  The unauthenticated revenue sheet is insufficient to establish the number of class members. While
3  reasonable inferences may be warranted to find numerosity, a finding of numerosity here would be
4  founded on nothing more than conjecture devoid of factual support. Therefore, Effinger falls well
5  short of establishing the numerosity necessary to satisfy Rule 23(a).

### 2. Commonality

Rule 23(a)(2) requires the party seeking certification to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, the common question must be "capable of class-wide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2)[,] even a single common question will do." *Id.* at 359 (internal quotations and modifications omitted). The Ninth Circuit has explained:

> The requirements of Rule 23(a)(2) have "been construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." However, it is insufficient to merely allege any common question, for example, "Were Plaintiffs passed over for promotion?" Instead, they must pose a question that "will produce a common answer to the crucial question why was I disfavored."

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Dukes*, 564 U.S. at 350).

Effinger contends that her "claims rise and fall on Defendant's actions that uniformly applied to all Class members, including whether Ancient Organics omitted and concealed material information and whether the label representations are misleading." Mot. at 7-8 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). In so arguing, Effinger leaps over and fails at a threshold step in this consumer fraud class action: she fails to establish the falsity of Ancient Organics's labels. She relies on Chief Judge Seeborg's order allowing certain of her claims to survive at the pleading stage, citing the order denying in part the motion to dismiss, as demonstrating the falsity of Ancient Organics's representations about its ghee. *See* Mot. at 7 (citing *Effinger v. Ancient Organics LLC*, 657 F. Supp. 3d 1290, 1299 (N.D. Cal. 2023)). In

6

1  focusing so heavily on her surviving at the pleading stage, Effinger fails to proffer any common
2  evidence capable of resolving, on a classwide basis, whether a reasonable consumer would have
3  been deceived by the ghee product's alleged mislabeling. *See Halliburton*, 573 U.S. at 275
4  ("[P]laintiffs wishing to proceed through a class action must actually *prove* – not simply plead –
5  that their proposed class satisfies each requirement of Rule 23[.]").

6  As another court in this District stated, "Whether a statement or advertisement is likely to
7  mislead is generally a question of fact,' [] and the plaintiff bears an 'evidentiary burden' to
8  demonstrate, consistent with the definition of likelihood of deception set forth in [*Lavie v. Procter*
9  *& Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)], 'that it is probable that a significant portion of
10  the consuming public could be confused by the [allegedly misleading] labeling of defendants'
11  products,' []" *Vizcarra*, 339 F.R.D. at 548 (internal citations omitted).  Proving the common
12  question of a material misrepresentation requires proof at this stage, not merely allegations.

13  Effinger's Declaration, even when read in the light most favorable to the putative class,
14  does not satisfy her evidentiary burden. *See* ECF 73-2. The Declaration does not demonstrate that
15  it is probable that a significant portion of the consuming public could be confused by the labeling
16  of Ancient Organics's products. Instead, the Declaration provides a formulaic account of
17  Effinger's individualized assessment of the Product label. *See id.* ¶¶ 7-10. This is insufficient to
18  support class certification. Indeed, reliance on Effinger's single complaint is not enough to show
19  the product deceived even a single other purchaser because Plaintiffs cannot even offer evidence
20  from the co-Plaintiff lost by counsel, Stevernu, in support of certification. *See Grodzitsky*, 957
21  F.3d at 987 (finding no commonality where "[i]n the absence of [an expert] report . . . the
22  remaining evidence consisted solely of highly individualized complaints").

23  In an attempt to buttress her declaration, Effinger presents articles from the Ancient
24  Organics website suggesting that ghee offers healthy forms of fat, including saturated fat. *See*
25  Keeton Decl., Ex. M, Ex. N, Ex. O (ECF 73-1 at 25-35). But Effinger did not allege to have seen
26  or relied upon the statements from Ancient Organics's website, undermining the articles' import to
27  the case. *Compare* Mot. 3 nn.2-4 (citing Keeton Decl. Exs. F-G, M-O), 15 (citing Keeton Decl.
28  Exs. F, L) *with* Harper Decl., Ex. B at Suppl. Resp. RFA No. 3 ("Plaintiff does not have a specific

7

1    recollection of seeing or reading [an] advertisement other than the ghee product label."). Effinger,
2    more importantly, presents no countervailing evidence to establish the falsity of Ancient
3    Organics's statements.

4        Proof of falsity presumably could have been satisfied through expert reports or customer
5    surveys, but Effinger offers nothing. The only evidence submitted regarding the falsity of the
6    purported misrepresentations is Effinger's Declaration (Mot. at 12 n.8, 15 n.20) and articles from
7    Ancient Organics's website (*id.* at 15 n.21). Effinger attempts to rebut Ancient Organics's attack
8    on the absence of evidence, citing, "[t]he California Court of Appeal has expressly rejected the
9    view that a plaintiff must produce a consumer survey or similar extrinsic evidence to prevail on a
10   claim that the public is likely to be misled by a representation. Thus, the lack of extrinsic evidence
11   of reliance does not automatically prevent class certification." Reply at 4 (quoting *Mullins v.*
12   *Premier Nutrition Corp.*, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016) (cleaned up)). But
13   regardless of the precise type of evidence proffered, Effinger presents neither intrinsic evidence
14   that the labels are false (on the assumption the fat contained in clarified butter is necessarily
15   unhealthy) or extrinsic evidence that a significant portion of the consuming public would be
16   confused by the labels. None of the material cited by Effinger constitutes common evidence
17   capable of resolving on a classwide basis the issue of whether a reasonable consumer would be
18   deceived by the ghee product's alleged mislabeling. "[W]here . . . the plaintiff has not shown that
19   the alleged misrepresentations could be deceptive as a matter of law . . . , the plaintiff must point
20   to common evidence other than the alleged misrepresentations themselves to establish that the
21   question of likelihood of deception can be resolved on a classwide basis." *Vizcarra*, 339 F.R.D. at
22   548. Effinger fails to offer any such common evidence. She accordingly fails to show the
23   commonality necessary to support class certification.

24       **3.**    **Adequacy**
25       Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately
26   protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Legal adequacy is determined by
27   resolution of two questions: (1) whether named plaintiffs and their counsel have any conflicts with
28   class members; and (2) whether named plaintiffs and their counsel will prosecute the action

8

vigorously on behalf of the class." *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 263 (N.D. Cal. 2016); *see also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Courts considering the adequacy of a class representative and their counsel have looked to factors such as "[d]elays in seeking class certification, a failure timely to prosecute the litigation, and any failure to comply with reasonable disclosure obligations or discovery requests." *Kandel v. Brother Int'l Corp.*, 264 F.R.D. 630, 634 (C.D. Cal. 2010) (collecting cases). Importantly, "even where all the other requirements of Rule 23 are satisfied, class treatment is inappropriate where the plaintiff's counsel is inadequate to represent the class." *Kaur v. Things Remembered, Inc.*, No. 14-CV-05544-VC, 2016 WL 11811049, at *2 (N.D. Cal. Apr. 20, 2016)

Here, Plaintiff's counsel argues that she and her counsel satisfy the standard for adequacy. *See* Mot. at 9. In the face of Ancient Organics's pointed contentions regarding the inadequacy of Plaintiff's counsel in this litigation, Opp. at 9-10, Plaintiff's counsel states only that they have fought for the class despite Defense counsel's efforts to derail the litigation, Reply at 2-3. It is difficult to credit Plaintiff's counsel's view, and to the contrary, the other factors support finding counsel inadequate in this case.

For example, Plaintiff's counsel first sought an extension of deadlines in late March 2024, only four days prior to the then-existing fact discovery deadline. *See* ECF 54. Though the Court granted that extension, ECF 61, Plaintiff's counsel still sought several more extensions of time. On the day expert disclosures were due, Plaintiff's counsel asked for, but failed to show good cause to warrant, extension of deadlines for expert disclosures and the motion for class certification. *See* Mot. Extension of Time (ECF 65); Order Denying Mot. for Extension (ECF 67) at 5. Plaintiff's counsel subsequently failed to take timely discovery necessary to support class certification despite earlier extension of the schedule for that purpose. ECF 67 at 4; *see also* Harper Decl. (ECF 79-1) ¶ 6 (describing Plaintiff's failure to take a single deposition or secure an expert). Plaintiff's counsel failed to meet discovery obligations, resulting in waiver of objections to interrogatories. Order Denying Mot. for Extension (ECF 67) at 4 & n.2 (compelling interrogatories that were six months late and waiving objections). Plaintiff's counsel participated in mediation and settlement negotiations on behalf of a client with whom they lost contact, Opp. to

Mot. for Extension (ECF 57) at 2, and subsequently sought dismissal of that client without authorization, Order Denying Mot. Dismiss Stevernu (ECF 69) (noting counsel's lack of cited "authority for the premise that an attorney may seek dismissal of a client's claims in the absence of the client's knowledge or consent"). Further still, Plaintiff's counsel sought last-minute extensions of deadlines related to the class certification briefing that, while not the fault of a lead attorney's medical unavailability, is irreconcilable with the presence of three law firms on the papers who should have been able to timely file briefing.[3] *See* Reply (ECF 82), Mot. for Extension (ECF 88).

Plaintiff's counsel failed to advance the case with the vigor expected of class counsel. Though Plaintiff's counsel may attribute the shortcomings and delays on Defense counsel's litigation conduct, it was Plaintiff's counsel that bore the responsibility to push the case forward and to obtain the necessary proof to make out the class claims. The Court thus finds Plaintiff's counsel inadequate to represent the proposed class.

### III. CONCLUSION

Given that Effinger fails to satisfy several threshold elements of Rule 23(a), the Court does not further consider whether she can represent a damages class under Rule 23(b)(3), an injunction class under Rule 23(b)(2), or an issues class under Rule 23(c)(4). The Court **DENIES** Effinger's motion for class certification.

The Court **ORDERS** the parties to meet and confer regarding next steps in this case. The parties shall file a proposed trial and pretrial schedule within 28 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: May 23, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

---

[3] Attorney Michael L. McGlamry is listed at the top of Plaintiff's class certification briefs with two asterisks denoting "pro hac vice forthcoming." *See, e.g.*, Mot. at 1. McGlamry has failed to file a motion to appear pro hac vice even at this late date, on the eve of the continued class certification hearing and eight months after filing the opening brief. Though not dispositive on the issue of adequacy, McGlamry's failure to file the necessary paperwork to appear in the case is emblematic of a lack of diligence in litigating the matter.